1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

ROBERT WILSON, *et al.*,

10                           Plaintiffs,

11              v.

12   MAXIM HEALTHCARE SERVICES, INC.,

13                           Defendant.

Case No. C14-789RSL

ORDER GRANTING MOTION FOR
CONDITIONAL CERTIFICATION

14
15
16

    This matter comes before the Court on plaintiffs' pre-discovery motion for conditional

certification of a collective action. Dkt. # 10.  Having reviewed the memoranda, declarations,

17   and exhibits submitted by the parties, the Court finds as follows.

18                                  **I.  BACKGROUND**

19      In May 2014, named plaintiffs Robert Wilson and Eric McNeal filed this case as a

20   collective action seeking to recover unpaid wages under § 216(b) of the Fair Labor Standards

21   Act ("FLSA"), 29 U.S.C. § 201, et seq.  Dkt. # 1 (Compl.).  Plaintiffs were employed as Staffing

22   Recruiters for defendant.  Id. ¶¶ 11-12.  They contend that during their employment with

23   defendant they were misclassified as exempt from overtime compensation and thus wrongly

24   denied this compensation for time worked in excess of 40 hours per week, in violation of the

25   FLSA and Washington's Minimum Wage Act, R.C.W. § 49.46, et seq.  Id. ¶¶ 39- 60.

26      Plaintiffs filed the instant motion on July 15, 2014, seeking conditional certification of a

27
28   ORDER GRANTING MOTION FOR
     CONDITIONAL CERTIFICATION - 1

1  nationwide collective action consisting of all of defendant's current and former Staffing

2  Recruiters who worked for defendant "during the past three years". Dkt. # 10 at 1. Plaintiffs

3  seek conditional certification so that notice may be sent to potential class members notifying

4  them of this action and their ability to "opt-in." Id. at 3-4. Plaintiffs request that the Court order

5  defendant to produce the names, job titles, contact information and certain employment and

6  personal information of these employees, as well as approve the proposed notice that plaintiffs

7  have provided. Id. at 1-3. Named plaintiffs and three other "opt-in" plaintiffs (who also worked

8  for defendant as Recruiters) have filed five declarations in support of the instant motion. Dkt.

9  ## 5-7, 31.

10      Plaintiffs agreed to renote their motion for September 28, 2014. Dkt. # 22. In August

11  2014, the Court denied defendant's request to engage in limited expedited discovery concerning

12  whether the case should proceed as a collective action. Dkt. # 28.

13      Defendant Maxim Healthcare Services, Inc. ("Maxim") provides recruiting services on a

14  nationwide basis to a wide variety of clients. Dkt. # 34 (Goldberg Decl. ¶ 2). Defendant's

15  argument in response to plaintiffs' motion is that plaintiffs cannot make the requisite showing at

16  this stage of litigation that they are "similarly situated" to the putative class members, given the

17  wide variety of job duties that defendant's Staffing Recruiters perform across its various

18  business lines. Dkt. # 32. Defendant has produced declarations from 12 Recruiters in support of

19  its opposition to plaintiffs' motion, Dkt. ## 35-46, along with a declaration from a Maxim

20  executive speaking to the varied nature of Recruiters' roles and responsibilities within Maxim,

21  Dkt. # 34 (Goldberg Decl.).

## II.  LEGAL STANDARDS

### A.    Collective Action Certification

24      The FLSA requires covered employers to pay their employees a minimum wage and

25  overtime wages for hours worked in excess of 40 per week, 29 U.S.C. §§ 206, 207, and provides

26  that an employee may bring a collective action on behalf of himself and other "similarly

27

28  ORDER GRANTING MOTION FOR
    CONDITIONAL CERTIFICATION - 2

1   situated" employees for violating the Act, 29 U.S.C. § 216(b).  In contrast to class actions

2   brought pursuant to Fed. R. Civ. P. 23, § 216(b) collective actions are "opt-in," meaning that

3   employees who seek to join the action must file a written consent with the district court.

4   Bollinger v. Residential Capital, LLC, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011).  A

5   purported class member's statute of limitations continues to run until he joins the collective

6   action.  Centurioni v. City and Cnty. of San Francisco, 2008 WL 295096, at *3 (N.D. Cal. Feb.

7   1, 2008).  The decision whether to certify a collective action is within the discretion of the

8   district court, and plaintiffs bear the burden of showing that they and the putative class members

9   are "similarly situated."  Adams v. Inter-Con Sec. Sys., 242 F.R.D. 530, 535 (N.D. Cal. 2007)

10  (citation omitted).

11       The FLSA does not define the term "similarly situated," and the Ninth Circuit has not yet

12  interpreted the term; nevertheless, courts in this Circuit apply a two-step inquiry to determine

13  whether a collective action should be certified, involving preliminary and then final

14  determinations of whether class members are "similarly situated."  Benedict v. Hewlett-Packard

15  Co., 2014 WL 587135, at *5 (N.D. Cal. Feb. 13, 2014); Bollinger, 761 F. Supp. 2d at 1119;

16  Wynn v. Nat'l Broad. Co., Inc., 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002).

17                    **(i).   Conditional Certification**

18       At the first stage, the Court determines whether the representative plaintiffs and putative

19  class members are "similarly situated" such that a collective action should be conditionally

20  certified for the purpose of sending notice of the action to the latter (so that they may decide

21  whether to opt in).  Benedict, 2014 WL 587135, at *5.  At this "notice stage," the Court requires

22  little more than "substantial allegations," supported by evidence, that the entire proposed class

23  was subject to a "single decision, policy or plan that violated the law."  Id. (citation omitted).

24  "Because there is little evidence before the court at this stage, the court must rely on the

25  pleadings and affidavits submitted by the parties in deciding whether potential plaintiffs should

26  receive notice."  Bollinger, 761 F. Supp. 2d at 1119.  The "similarly situated" standard at this

27
28  ORDER GRANTING MOTION FOR
     CONDITIONAL CERTIFICATION - 3

phase is fairly lenient and typically results in certification, <u>Kress v. PricewaterhouseCoopers, LLP</u>, 263 F.R.D. 623, 627-28 (E.D.Cal. 2009) (citation omitted).  While the "similarly situated" standard here is "considerably less stringent" than Rule 23's requirement that common questions predominate over individual ones, courts seek an indication that hearing plaintiffs' claims together will promote judicial economy, as well as serve the remedial purposes of the FLSA. <u>See Benedict</u>, 2014 WL 587135, at *5 (citations omitted); <u>Wood v. TriVita, Inc.</u>, 2009 WL 2046048, at *4 (D. Ariz. Jan. 22, 2009).

In "misclassification" cases such as this one, where the plaintiffs' theory is that defendant misclassified them as exempt, the plaintiffs must show that they and the putative class members performed similar job duties.  <u>Kress</u>, 264 F.R.D. at 629-30; <u>Trinh v. JP Morgan Chase & Co.</u>, 2008 WL 1860161, at *13 (S.D. Cal. Apr. 22, 2008).  This is because the Court's concern in such cases is "whether plaintiffs' evidence indicates that the propriety of the classification may be determined on a collective basis."  <u>Benedict</u>, 2014 WL 587135, at *8 (quoting <u>Kress</u>, 263 F.R.D. at 630).  The nature of an employee's job duties dictates whether he falls under an exemption, and thus the similarities between employees' duties dictates whether their claims should be tried together.  <u>See Kress</u>, 264 F.R.D. at 629-30; <u>Trinh</u>, 2008 WL 1860161, at *13.  Some courts have also emphasized whether plaintiffs can show that they and the putative class members fell under similar compensation schemes, <u>Trinh</u>, 2008 WL 1860161, at *3; <u>Bollinger</u>, 761 F. Supp. 2d at 1119; or whether plaintiffs have provided some indication that their claims would rely on common evidence.  <u>See, e.g.</u>, <u>Trinh</u>, 2008 WL 1860161, at *5.  <u>But see</u> <u>Hensley v. Eppendorf N. Am., Inc.</u>, 2014 WL 2566144, at *7 (S.D. Cal. June 6, 2014) (showing of common proof not necessary at the notice stage where the court could infer its existence from the evidence presented).  Critically, plaintiffs need not conclusively establish that collective action is proper, because defendants will be free to revisit this issue at the close of discovery.  <u>Kress</u>, 264 F.R.D. at 630.

ORDER GRANTING MOTION FOR
CONDITIONAL CERTIFICATION - 4

1

### (ii).    Decertification

2   The second stage occurs after discovery is complete, usually on defendant's motion to

3   decertify. Khadera v. ABM Indus., Inc., 701 F. Supp. 2d 1190, 1194 (W.D. Wash. 2010).  At

4   this point, the Court uses a stricter standard for determining whether the plaintiffs are similarly

5   situated. Troy v. Kehe Food Distributors, Inc., 276 F.R.D. 642, 649 (W.D. Wash. 2011).  The

6   Court must consider several factors at this stage, including the specific duties and conditions of

7   employment of the individual plaintiffs, and the various defenses available to the defendant with

8   respect to the individual plaintiffs. Id.; Romero v. Producers Dairy Foods, Inc., 235 F.R.D. 474,

9   482 (E.D. Cal. 2006).  If the Court, considering the additional evidence acquired during

10  discovery, determines that the plaintiffs are not similarly situated, it may decertify the class and

11  dismiss the opt-in plaintiffs without prejudice. Romero, 235 F.R.D. at 482.  Occasionally, courts

12  skip the lenient first-stage analysis and proceed directly to applying a second-stage level of

13  scrutiny where substantial discovery has been completed. Smith v. T-Mobile USA, Inc., 2007

14  WL 2385131, at *4 (C.D. Cal. Aug. 15, 2007) (collecting cases).

15  ### B.    Administrative Exemption

16  Although the Court is not ruling on the merits of plaintiffs' claims at this stage, it is

17  relevant to note the substantive basis for their collective action.  An employee is exempt from 29

18  U.S.C. § 207 if he is employed in an "administrative" capacity.  29 U.S.C. § 213(a)(1).  An

19  employee receiving a salary of over $455 per week is administrative if his "primary duty" is "the

20  performance of office or non-manual work directly related to the management or general

21  business operations of the employer or the employer's customers," and his "primary duty"

22  includes the exercise of discretion and independent judgment with respect to matters of

23  significance."  29 C.F.R. §§ 541.200(a)(2-3); 541.600(a).  In turn, work directly relates to an

24  employer's management or general business operations where it directly relates "to assisting

25  with the running or servicing of the business."  29 C.F.R. § 541.201(a).  This does not include

26  merely "the day-to-day carrying out" of the business' affairs.  Bothell v. Phase Metrics, Inc., 299

27

28  ORDER GRANTING MOTION FOR
    CONDITIONAL CERTIFICATION - 5

F.3d 1120, 1125 (9th Cir. 2002).  An employee's primary duties must constitute exempt work for him to fall under the administrative exemption, 29 C.F.R. § 541.700; and determining an employee's primary duties requires examining "all the facts in a particular case" and "the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).  Regulations emphasize that a job title alone is insufficient to establish an employee's exempt or nonexempt status, and that the employee's "salary and duties" are determinative.  29 C.F.R. § 541.2.

## III.  DISCUSSION

Consistent with its prior order denying limited expedited discovery, Dkt. # 28, the Court will rule on plaintiffs' motion for conditional certification under the lenient standard generally applied at the notice stage.  Thus, the question before the Court is whether plaintiffs and the proposed class members are similarly situated with respect to a common policy or plan established by defendant that violated the law.

### A.    Declarations Considered

The Court notes up front that both parties' sets of declarations raise non-fatal reliability concerns.  Defendant's current-employee declarants were potentially chosen selectively from the nationwide class, and courts in this District and this Circuit have expressed distrust with such declarations on the grounds that the declarants could have felt pressure to absolve their employers.  See, e.g., Morden v. T-Mobile USA, Inc., 2006 WL 2620320, at *3 (W.D. Wash. Sept. 12, 2006).  Plaintiffs' declarations in turn can be accurately characterized as "cookie cutter" affidavits, largely identical.  However, this does not discredit plaintiffs' declarations at this stage.  Sanchez v. Sephora USA, Inc., 2012 WL 2945753, at *2 (S.D. Cal. Jul. 18, 2012). More problematically, plaintiffs' declarations are few and brief, are limited to employees from two offices in two states, and mostly if not entirely come from employees in the same business line (Nurse Staffing).[1]  The question is whether such a handful of declarations can suffice to

---

[1] Plaintiffs' motion makes clear that its declarants were only based in Missouri and Washington. Dkt. # 10 at 16.  It is not clear whether opt-in plaintiffs Melissa Bettorf and Laura Phipps were in the Nurse Staffing business line.

ORDER GRANTING MOTION FOR
CONDITIONAL CERTIFICATION - 6

suggest that their authors are similarly-situated to every Maxim Staffing Recruiter in the country, especially in light of defendant's affidavits.

The Court finds that the declaration of Melissa Bettorf is admissible and the declaration of Laura Phipps must be excluded.[2]  This leaves plaintiffs with attempting to conditionally certify a nationwide class of potentially hundreds with four declarations concerning three offices in two states.[3]  Certifying a nationwide class in a misclassification case on a small number of declarations is not unprecedented in this Circuit.  Sanchez, 2012 WL 2945753, at *3 (conditionally certifying nationwide class on the basis of five employee declarations representing different "retail establishments, regions, and districts"); Gilbert v. Citigroup, Inc., 2009 WL 424320, at *4 (N.D. Cal. Feb. 18, 2009) (conditionally certifying nationwide class on the basis of five declarations representing employees' experiences at seven of defendants' California branch offices, where defendants anticipated the class size would approximate 878 employees from 10 states).  The general rule for this Circuit is that "[a] plaintiff need not submit a large number of declarations or affidavits to make the requisite factual showing that class members exist who are similarly situated to him.  A handful of declarations may suffice." Benedict, 2014 WL 587135, at *6 (citing cases) (conditionally certifying nationwide class based on 30 declarations).  Therefore, plaintiffs have submitted sufficient evidence for their motion to be seriously considered.

---

[2]  Defendant argues that Bettorf's declaration should be excluded because her claim is barred by an arbitration agreement.  Dkt. # 32 at 9.  Even if this were the case, defendant has presented no evidence or atuhority to suggest that this Court should not consider Bettorf's declaration "evidence" for the purposes of ruling on the instant motion even if she many not participate as a party.  See Sanchez, 2012 WL 2945753, at *1 n. 1 (considering the declaration of an opt-in plaintiff whom defendants argued was not an employee during the class period, ruling that this was "not germane" to the Court's analysis). Phipps' declaration was introduced on reply and therefore will be excluded. Generally, this Court will not consider evidence submitted on reply, as the opposing party does not have the opportunity to respond.  See, e.g., Cabell v. Zorro Prods., Inc., 2014 WL 5364444, at *3 (W.D. Wash. Oct. 21, 2014) (striking evidence submitted on reply to motion for summary judgment).

[3]  While Bettorf's declaration does not state that she worked for defendant in Missouri, as plaintiffs' motion indicates, Dkt. # 10 at 16, this is implied by her consent form, Dkt. # 9-1.

ORDER GRANTING MOTION FOR
CONDITIONAL CERTIFICATION - 7

1

**B.      Common Policy or Plan**

2          It is undisputed that all Recruiting Staffers were classified and treated as exempt

3    regardless of their duties, and Defendant's own affidavits indicate that Recruiters may work

4    more than 40 hours per week, e.g., Dkt. # 41 (McIntosh Decl. ¶ 27).  The alleged unlawful

5    policy or plan at issue, therefore, is depriving Recruiters of overtime pay.  The question before

6    the Court is thus whether plaintiffs and putative class members were similarly situated with

7    respect to their job duties.[4]  Kress, 264 F.R.D. at 629-30.

8

**C.      Similarly Situated With Regards to Duties**

9

**(i).     Evidence Presented**

10         Plaintiffs' evidence largely consists of their four remaining declarations and a list of job

11   postings (pulled from defendant's website) for the "Healthcare Recruiter/Entry Level Sales

12   Management" position.  All of plaintiffs' postings state the following under the job description:

13   *Healthcare Recruiter Core Responsibilities include:*
     • **Support and sustain Maxim's commitment to compliance**
14        ○ Maintain awareness and understanding of compliance—Maxim business policies
            and Code of Conduct, Federal/State Regulations, and contract-specific
15          requirements
          ○ Participate in core compliance training and activities
16        ○ Identify and communicate areas of risk and potential improvement opportunities
     • **Recruit potential caregivers**
17        ○ Locate Healthcare professionals through various sources, including the Internet,
            referrals, nursing schools, direct mail and job fairs
18        ○ Facilitate the hiring process, which includes interviewing and screening
            candidates
19        ○ Demonstrate the ability to guide a candidate through Maxim's hiring process
          ○ Present qualified candidates to clients

20   _____

21        [4]  Defendant suggests that the Court should not presume for the purposes of this motion that its
     classification policy "violated the law," given that defendant's affidavits demonstrate that many Staffing
22   Recruiters were properly classified as exempt given their responsibilities.  Dkt. # 32 at 10, 25.  The
     Court finds this merits-based argument more properly considered at the second stage of analysis.  See
23   Benedict, 2014 WL 587135, at *11 ("Courts routinely hold that the potential applicability of an FLSA
     exemption does not preclude conditional certification.") (citation and quotation marks omitted)
24   (collecting cases); see also Stickle v. SCI W. Mkt. Support Ctr., L.P., 2009 WL 3241790, at *3 (D. Ariz.
     Sept. 30, 2009) (at the notice stage, "courts do not review the underlying merits of the action.").
25   Defendant's more specific argument is that determining whether class members were properly classified
     as exempt will require excessive individualized inquiry, and that this consideration outweighs all factors
26   supporting notice certification.  The Court addresses this argument infra.

27   ORDER GRANTING MOTION FOR
28   CONDITIONAL CERTIFICATION - 8

- **Assist in the Sales Process**
  - Manage healthcare professionals and place them on top medical assignments
  - Consult with clients to provide appropriate staffing solutions
  - Identify and/or resolve client customer service issues
  - Provide 24 hour support to our clients
  - Analyze financial reports and edit weekly payroll
  - Assist Accounts Manager in prospecting new business
- **Communicate effectively**
  - Maintain direct communication with candidates, clients, and team members during the recruiting process
  - Resolve client customer service issues
- **perform all other duties as assigned**

Dkt. # 11-8 at 2 (emphasis in original).

Plaintiffs' declarations set out the following propositions. Plaintiffs had an "entry-level" position at Maxim with duties including (but "not limited to") the following:

(1) [A]ssisting in the placement process for healthcare professionals by screening potential candidates regarding their minimum qualifications and fitness for employment in accordance with the standards set forth by Maxim and my superiors; (2) recruiting potential candidates from various internet sites, schools, direct mail, job fairs, and cold calls; (3) answering the phone; (4) inputting payroll hours for billing purposes; (5) assisting in scheduling the healthcare professionals; and (6) providing 24-hour support to Maxim's clients.

Dkt. ## 5-7, 31 (Pls.' Decls. ¶ 2).[5]  Additionally, while they "facilitated the hiring process," they lacked the discretion, judgment or ability to make decisions concerning hiring, firing, rates of pay, placement fees, job performance, disciplinary matters or specific job duties. Id. ¶ 3. They worked a similar schedule of 8 am to 6 pm or 7 am to 5 pm, remaining on call 24 hours per day for several days a week, and often working more than 40 hours a week without receiving overtime compensation. Id. ¶ 4.

Defendant offers evidence and declarations pointing to a number of distinctions between the duties described by plaintiffs and those of other Recruiters. In response to the job postings and descriptions provided by plaintiffs, defendant offers its own list of job postings and descriptions to show that different types of Recruiters have different responsibilities. Dkt. # 34-1. For example, Senior Recruiters are expected to help develop working relationships with

---

[5] Because they are identical, plaintiffs' declarations are cited collectively, here.

ORDER GRANTING MOTION FOR
CONDITIONAL CERTIFICATION - 9

Maxim clients, select internal staff and assist with the orientation process for new "external employees."[6] Id. at 9-10.  Recruiters in the Government Services business line are expected to evaluate staff performance and counsel external staff members on performance issues.  Id. at 17.  Recruiting Team Leaders for the TimeLine business line are expected to manage and supervise their teams of Search Consultants.  Id. at 25.  Direct Placement Managers for the Travel Division are expected to screen, hire and train personnel.  Id. at 41.  However, the Court also sees parallels between the duties listed in many of these descriptions and the evidence offered by plaintiffs: Recruiters are expected to identify and solicit candidates, id. at 48 (Travel Division Recruiter); facilitate the hiring and screening process for these candidates, id. at 48 (Travel Division Recruiter), 52 (Physician Consultant); and provide 24-hour support to clients, id. at 38 (Professional Recruiter).

Defendant also offers the declaration of Jeremy Goldberg, currently a Vice President of Business Development, who has extensive knowledge of Maxim's Recruiter workforce and their responsibilities.  Dkt. # 34 (Goldberg Decl.).  Goldberg's declaration explains at length and in detail Maxim's types of Recruiters and how their duties and work experiences differ based on factors such as their rank, geography and division within the company.  See generally id.  However, two general statements strike the Court as particularly relevant to its notice-stage analysis.  On one hand, according to Goldberg, Staffing Recruiters are expected to "counsel, coach, and discipline external employees on performance issues," and when necessary "terminate or remove them from a particular client's site," denoting a level of responsibility greater than that conveyed by plaintiffs' declarations.  Id. ¶ 34.  However, their core functions also include "critical aspects of the hiring process [for clients], including sourcing, recruiting, screening, evaluating, interviewing, selecting, and hiring external employees."  Id. ¶ 33.  While plaintiffs did not attest to having final authority to hire, this is otherwise highly consistent with

---

[6] External employees are temporary health care personnel that Maxim Recruiters hire and place with their clients.  Dkt. # 34 (Goldberg Decl. ¶¶ 11, 16).

plaintiffs' descriptions of their day-to-day functions.  While not a significant item in Goldberg's declaration, the Court further notes that Maxim has apparently "expanded" the use of administrative personnel such as "Credentialing Coordinators" so that Staffing Recruiters may focus on performing the aforementioned core functions, further suggesting similarities in the putative class members' day-to-day responsibilities.  Id. ¶ 27.

Defendant's Recruiter declarants further suggest varying responsibilities and work experiences.  The declarants have interviewed job candidates for a range of factors arguably or clearly reaching beyond their "minimum qualifications." E.g., Dkt. # 35 (Guinn Decl. ¶ 13); Dkt. # 38 (Kuhn Decl. ¶ 8); Dkt. # 44 (Maravich Decl. ¶ 12).  They have been paid under various compensation schemes.  E.g., Dkt. # 35 (Guinn Decl. ¶ 28); Dkt. # 38 (Maravich Decl. ¶ 6); see generally Dkt. # 34 (Goldberg Decl. ¶¶ 29, 31-32).  They have enjoyed varying degrees of authority to negotiate pay rates with external employees.  E.g., Dkt. # 36 (Wright Decl. ¶ 15); Dkt. # 43 (Taylor Decl. ¶ 14).  They have coached and disciplined employees, e.g., Dkt. # 40 (Nuccio Decl. ¶¶ 15-16); and some have had the discretion to terminate external employees with or without manager approval, e.g., Dkt. # 41 (McIntosh Decl. ¶ 16); Dkt. # 45 (Garver Decl. ¶ 16).

Defendant's declarants suggest that they have enjoyed significantly greater roles in the external hiring process than plaintiffs: for example, one claims to have made hiring recommendations that were seriously considered, Dkt. # 45 (Garver Decl. ¶ 12); another claims that he currently has the authority to hire external employees and that their "Account Manager" merely signs-off on the hiring as a formality, Dkt. # 36 (Wright Decl. ¶ 16); and another claims to have been given "sole discretion" to decide whom to hire and place with a number of his clients, Dkt. # 38 (Kuhn Decl. ¶ 9).  Defendant emphasizes that its declarants (and Staffing Recruiters in general) recruit various types of employees to place with various types of clients, suggesting that this imposes different duties on different Recruiters.  Dkt. # 32 at 18-19.

Although plaintiffs did not speak to these issues, defendant emphasizes that its declarants

ORDER GRANTING MOTION FOR
CONDITIONAL CERTIFICATION - 11

1    have been involved in training and supervising other Recruiters, e.g., Dkt. # 35 (Guinn Decl.

2    ¶ 27); Dkt. # 38 (Kuhn Decl. ¶ 16); and have participated in sales activities and client

3    development, e.g., Dkt. # 35 (Guinn Decl. ¶ 23); Dkt. # 37 (Rayburg Decl. ¶¶ 25-26).  Finally,

4    defendant emphasizes that those Recruiters who are promoted to the level of "Senior Recruiter"

5    enjoy a widened range of responsibilities, including additional duties in the areas of training

6    Recruiters, hiring internal employees, and interacting with clients.  E.g., Dkt. # 38 (Kuhn Decl.

7    ¶ 16); Dkt. # 41 (McIntosh Decl. ¶¶ 22-23); Dkt. # 45 (Garver Decl. ¶¶ 20-22, 26).  Defendant

8    also emphasizes that "Professional Recruiters" have significantly different responsibilities from

9    those plaintiffs described were part of their "entry-level" position; e.g., they develop recruiting

10   and training strategies for Maxim offices.  Dkt. # 38 (Kuhn Decl. ¶¶ 18, 24-26).

11        The Court notes, however, that defendant's declarations bear certain key similarities to

12   plaintiffs', namely in that a number of defendant's Recruiters speak to carrying-out the same

13   core job duties in terms of identifying, soliciting, and screening employment candidates for

14   clients.  Dkt. # 41 (McIntosh Decl. ¶¶ 19, 27); Dkt. # 44 (Maravich Decl. ¶ 12); Dkt. # 45

15   (Garver Decl. ¶ 7).

16                    **(ii).   "Similarly Situated" Finding**

17        The Court finds enough here to satisfy the lenient "similarly situated" standard applied at

18   the notice stage and merit conditionally certifying a nationwide class (and sending notice to

19   potential class members).  The record as a whole suggests strong similarities between Recruiters'

20   core duties (principally in terms of vetting candidates for hiring), and the Court appreciates that

21   members of an employment collective action will not all have identical work experiences.  The

22   Court is unconvinced at this point that it would be unmanageable to aggregate class members'

23   claims and collectively adjudicate whether their roles were administrative for the purposes of the

24   FLSA.  The Court will revisit the issue after discovery.  Plaintiffs' declarations are not too few,

25   too unspecific or too discordant with the rest of the record to fail at the notice stage.  Given the

26   nature of the alleged nationwide FLSA violation and the apparent presence of similar plaintiffs

27

28   ORDER GRANTING MOTION FOR
     CONDITIONAL CERTIFICATION - 12

in multiple states, the Court sees no reason to limit this class geographically.

**(iii).   Concerning Individualized Inquiries**

Determining whether an employee falls under the administrative exemption of the FLSA is a fact-intensive inquiry that requires examination of their duties and their level of discretion and independence in undertaking these duties.  See In re Farmers Ins. Exch., Claims Representatives' Overtime Pay Litig., 481 F.3d 1119, 1127 (9th Cir. 2007); 29 C.F.R. §§ 541.700 (an employee's "primary duty" must be exempt work for him to fall under an exemption); 541.700(a) (discerning an employee's primary duty requires reviewing all the facts in a particular case).  Defendant argues that, especially given the range of varying responsibilities undertaken by its Recruiters, the Court should deny conditional certification because the case will require too much individualized inquiry (to determine which Recruiters were actually exempt) to ultimately prove efficient or even manageable.  Dkt. # 32 at 22-23.

Courts in this Circuit frequently reject defendant's argument in misclassification cases at the notice stage, on the grounds that the need for individualized inquiry may be more properly assessed at the decertification stage, where the Court is armed with a more complete record on which to rule.  E.g., Davis v. Soc. Serv. Coordinators, Inc., 2012 WL 3744657, at *23 (E.D. Cal. Aug. 28, 2012); Hensley, 2014 WL 2566144, at *7; Sanchez, 2012 WL 2945753, at *4. However, certain courts have denied conditional certification on these grounds, namely where plaintiffs provided no indication that they would rely on common evidence.  See Litty v. Merrill Lynch & Co., 2014 WL 5904907, at *10 (C.D. Cal. Aug. 4, 2014); Trinh, 2008 WL 1860161, at *13.  But see Hensley, 2014 WL 2566144, at *7 (court only needed to be able to infer the existence of common evidence).  This Court finds defendant's argument concerning individualized inquiries unpersuasive at this stage.  Plaintiffs have provided a reasonable basis to believe that their claims may be adjudicated collectively, and further discovery may indicate that the Court can effectively divide the collective action into subclasses in spite of the differences presented.  The Court may decertify the nationwide class if it finds that this cannot be done.

ORDER GRANTING MOTION FOR
CONDITIONAL CERTIFICATION - 13

1  Thus, while defendant raises compelling points, this Court will rule on them once discovery is

2  substantially complete.

3       **D.    Notice Process**

4       The parties are amendable to working together to finalize notice language, and plaintiffs

5  are amendable to a 60-day opt-in period commencing on the date that notice is sent.  Dkt. # 50 at

6  11.  Plaintiffs are also amendable to not sending notice to plaintiffs who are already bound by a

7  court-approved FLSA settlement and release.  Id. at 12.  The Court sees giving defendant 21

8  days to produce information concerning class members fair and prudent.

9       Plaintiffs will not be given the phone numbers of the potential opt-in plaintiffs receiving

10  notice, out of concern for the latters' privacy.  However, consistent with precedent from this

11  District, the Court will order defendant to provide class members' email addresses in addition to

12  their last known physical addresses.  See Thomas v. Kellogg Co., 2014 WL 716152, at *2 (W.D.

13  Wash. Jan. 9, 2014) (ordering defendants to produce both email addresses and telephone

14  numbers).

**IV.  CONCLUSION**

16       For all of the foregoing reasons, the Court GRANTS plaintiffs' motion for conditional

17  certification.  Dkt. # 10.

20       DATED this 22nd day of December, 2014.

Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION FOR
CONDITIONAL CERTIFICATION - 14