UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

**ROBERT WILSON** and **ERIC McNEAL**, individually and on behalf of all similarly situated individuals,

                    Plaintiffs,

          v.

**MAXIM HEALTHCARE SERVICES, INC.**, a Maryland corporation,

                    Defendant.

No. 2:14-cv-00789-RSL

**STIPULATED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS AND DISMISSAL WITH PREJUDICE**

**NOTE ON MOTION CALENDAR**
June 9, 2017

**STIPULATED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS AND DISMISSAL WITH PREJUDICE**

Plaintiffs, Robert Wilson and Eric McNeal, along with 133 other individuals ("Plaintiffs"),[1] by and through the undersigned counsel, and with consent of Defendant Maxim Healthcare Services, Inc. ("Maxim" or "Defendant"), hereby respectfully request that the Court approve their negotiated Confidential Settlement Agreements and Releases ("Agreements") and dismiss their actions with prejudice, with all parties to bear their own costs.  In support of this Joint Motion, the Parties state as follows:

Plaintiffs' Complaint asserts claims for alleged unpaid overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*  Defendant disputes Plaintiffs' claims and contends that Plaintiffs were fully compensated for all work performed.

The Parties agree and represent that they have reached a settlement that requires Plaintiffs to dismiss, with prejudice, their individual claims in exchange for a monetary payment, payment of their attorneys' fees and costs, and a release of Maxim from any further liability under the Fair Labor Standards Act and all applicable state wage and hour laws for the time period in question.

The Parties' Agreements resolve all of the claims that Plaintiffs brought or could have brought in the lawsuit, including claims under the Fair Labor Standards Act.  The Agreements

---

[1] The Plaintiffs covered by this Motion are listed in ***Exhibit A***.

also provide for Plaintiffs' attorneys' fees and costs.  Because the Agreements involve the settlement and release of claims under the Fair Labor Standards Act, the Parties must submit the proposed Agreements to the Court to examine and ensure that the Agreements represent a fair and reasonable resolution of a *bona fide* dispute.  After review, the Court can then enter an order dismissing the lawsuit with prejudice and permitting Plaintiffs' release of their claims under the Fair Labor Standards Act and all applicable state wage and hour laws.  *See Grewe v. Cobalt Mortg., Inc.*, 2016 U.S. Dist. LEXIS 98224 (W.D. Wash. July 27, 2016) (citing *Lynn's Food Stores*, 679 F.2d 1350, 1335 (11th Cir. 1982)).

Due to the confidentiality of the Agreements, the Parties have agreed not to make them public record.  Accordingly, the Parties also request permission to submit copies of the signed Agreements directly to the Court for *in camera* review and approval, and will await the Court's guidance on this request.

The Parties' respective counsel are experienced in litigating wage and hour lawsuits and engaged extensively in arm's length, good-faith settlement negotiations that considered the merits of Plaintiffs' claims, Maxim's defenses, and all the available and likely evidence.

Plaintiffs' claims were initiated as a collective action and the litigation has been ongoing for over two years.  Moreover, based on Maxim's defenses, Plaintiffs recognize that they might not have recovered anything or risked recovering much less than the amount that was claimed.  Similarly, Maxim acknowledges the risk that some or all of its defenses may have not been established and that Plaintiffs could have received favorable judgments, including liquidated damages.  Accordingly, in light of the length of time of the litigation, the factual and legal complexities of the cases, the inherent risks of trial, and the expense of continued litigation, the Parties agree that the terms reflected in the Agreements are mutually satisfactory and represent a fair and reasonable resolution of a bona fide dispute over, *inter alia*, any alleged unpaid wages due to Plaintiffs.  The settlements also promote the public's interest in encouraging settlement.

Additionally, given the complexity of the factual and legal issues and the months expended to reach a fair settlement, the award of attorneys' fees allocated in the cases to Plaintiffs' counsel is reasonable.

As the Parties have negotiated a mutually agreeable settlement, they jointly move the Court to: (1) approve the proposed Agreements; (2) dismiss this case with prejudice; and (3) retain jurisdiction to enforce the terms of the Agreements. [2]

WHEREFORE, for all the foregoing reasons the Parties respectfully request permission to submit a copy of the signed Agreements directly to the Court for *in camera* review, and that this Court approve the Agreements and dismiss this case with prejudice, with all Parties to bear their own costs.

Dated:  June 9, 2017                              Respectfully submitted,

                                        */s/  Jesse L. Young*
                                        Jason J. Thompson (Admitted Pro Hac Vice)
                                        Jesse L. Young (Admitted Pro Hac Vice)
                                        SOMMERS SCHWARTZ, P.C.
                                        One Towne Square, Suite 1700
                                        Southfield, MI 48076
                                        Telephone: (248) 355-0300
                                        Facsimile: (248) 864-7840
                                        Email: jthompson@sommerspc.com
                                            jyoung@somerspc.com

                                        Timothy J. Becker (Admitted Pro Hac Vice)
                                        JOHNSON BECKER, PLLC
                                        33 South Sixth Street, Suite 4530
                                        Minneapolis, MN 55402
                                        Tel: 612.436.1800
                                        Fax: 612.436.1801
                                        Email: tbecker@johnsonbecker.com

                                        *Attorneys for Plaintiff*

---

[2] In addition to the 135 settling Plaintiffs, seven (7) individuals asserting claims in this case will be voluntarily dismissed. Specifically, these individuals initially joined the case as opt-in plaintiffs; however, it was later discovered, based on Maxim's business records, that these individuals were either not Staffing Recruiters or were not Staffing Recruiters during the relevant statute of limitations.

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

**ROBERT WILSON** and **ERIC McNEAL**, individually and on behalf of all similarly situated individuals,

Plaintiffs,

v.

**MAXIM HEALTHCARE SERVICES, INC.**, a Maryland corporation,

Defendant.

No. 2:14-cv-00789-RSL

**MEMORANDUM IN SUPPORT OF STIPULATED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS AND DISMISSAL WITH PREJUDICE**

**NOTE ON MOTION CALENDAR**
June 9, 2017

## MEMORANDUM IN SUPPORT OF STIPULATED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENTS AND DISMISSAL WITH PREJUDICE

# TABLE OF CONTENTS

INDEX OF AUTHORITIES ................................................................................ii

I.      INTRODUCTION .............................................................................1

II      BACKGROUND ...............................................................................1

        A.      The Pleadings ..................................................................1

        B.      Conditional Certification and Other Pre-Discovery Events.........................1

        C.      Discovery ...........................................................................2

        D.      Settlement Discussions ...................................................3

III     LAW AND ARGUMENT ..................................................................4

        A.      The Legal Standard Supports Approval of the Settlement ...........................4

                1.      *A Bona Fide Dispute Exists* ..............................................5

                2.      *The Settlement Agreements are Fair and Reasonable* ......................6

        B.      Plaintiffs' Attorneys' Fees and Costs are Reasonable ...................................12

IV.     CONCLUSION              ..................................................................15

1

2

**Table of Authorities**

3

Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245 (N.D. Cal. 2015) .................................... 11

Blum v. Stenson, 465 U.S. 886, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984) ................................ 13

Bower v. Cycle Gear, Inc., No. 14-cv-02712-HSG, 2016 U.S. (N.D. Cal. Aug. 23, 2016) ........ 12

Camacho v. Bridgeport Fin., Inc., 523 F.3d 973 (9th Cir. 2008) ................................................. 12

Collins v. Sanderson Farms, Inc., 568 F. Supp. 2d 714 (E.D. La. 2008) ...................................... 5

Comstock v. Fla. Metal Recycling, L.L.C., No. CASE NO. 08-81190-CIV-HURLE,
2009 WL 1586604 (S.D. Fla. June 3, 2009) ................................................................................. 12

Crabtree v. Volkert, Inc., No. CIVIL ACTION 11-0529-WS-B, 2013 U.S. Dist.
LEXIS 20543 (S.D. Ala. Feb. 14, 2013) ......................................................................................... 8

Daniels v. Aéropostale W., Inc., No. C 12-05755 WHA, 2014 U.S. Dist. LEXIS 74081
(N.D. Cal. May 29, 2014) .............................................................................................................. 6

Deane v. Fastenal Co., No. 11-CV-0042 YGR, 2013 U.S. Dist. LEXIS 163330
(N.D. Cal. Nov. 14, 2013) .............................................................................................................. 5

Fegley v. Higgins, 19 F.3d 1126 (6th Cir. 1994) ......................................................................... 12

Gamble v. Boyd Gaming Corp., No. 2:13-cv-01801-JCM-PAL, 2015 U.S. Dist.
LEXIS 107279 (D. Nev. Aug. 13, 2015) ........................................................................................ 5

Gonzalez v. City of Maywood, 729 F.3d 1196 (9th Cir. 2013) .................................................... 13

Gonzalez-Rodriguez v. Mariana's Enters., No. 2:15-cv-00152-JCM-PAL, 2016
U.S. Dist. LEXIS 92198 (D. Nev. July 13, 2016) .......................................................................... 5

Goudie v. Cable Commc'ns, Inc., No. 08-507-AC, 2009 U.S. Dist. LEXIS 1907
(D. Or. Jan. 9, 2009) ...................................................................................................................... 5

Grewe v. Cobalt Mortg., Inc., No. CASE NO. C16-0577-JCC, 2016
U.S. Dist. LEXIS 98224 (W.D. Wash. July 27, 2016) ............................................................... 2, 4

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67 (9th Cir. 1975) .................................................. 13

King v. Wells Fargo Home Mortg., No. 2:08-cv-307-FtM-29SPC, 2009 U.S. Dist.
LEXIS 65721 (M.D. Fla. July 30, 2009) ........................................................................................ 8

Larsen v. Trader Joe's Co., No. 11-cv-05188-WHO, 2014 U.S. Dist. LEXIS 95538
(N.D. Cal. July 11, 2014) ......................................................................................................... 10-11

Lewis v. Vision Value, L.L.C., No. CASE NO. 1:11-cv-01055-LJO-BAM, 2012
U.S. Dist. LEXIS 99854 (E.D. Cal. July 18, 2012) ....................................................................... 7

Mamani v. Licetti, No. 13-CV-7002 (KMW) (JCF), 2014 U.S. Dist. LEXIS 91048
(S.D.N.Y. July 2, 2014) ................................................................................................................. 5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Mar v. Genuine Parts Co., No. 2:15-cv-01405-MCE-AC, 2017 U.S. Dist.
LEXIS 63505 (E.D. Cal. Apr. 25, 2017) ............................................................. 4-5, 5
Moreno v. City of Sacramento, 534 F.3d 1106 (9th Cir. 2008) ........................... 13
Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523 (C.D. Cal. 2004) ................ 6
Perdue v. Kenny A., 559 U.S. 542 (2010) ............................................................ 13
Rodriguez v. W. Publ'g Corp., 563 F.3d 948 (9th Cir. 2009) ............................... 11
Selk v. Pioneers Mem'l Healthcare Dist., 159 F. Supp. 3d 1164
(S.D. Cal. Jan. 29, 2016) ........................................................................... 5, 6, 10
Seminiano v. Xyris Enter., 602 F. App'x 682 (9th Cir. 2015) .................................. 1
Thornton v. Solutionone Cleaning Concepts, Inc., No. CIV F 06-1455 AWI SMS,
2007 U.S. Dist. LEXIS 8683 (E.D. Cal. Jan. 25, 2007) ........................................ 5
Tijero v. Aaron Bros., No. Case No: C 10-01089 SBA, 2012 U.S. Dist.
LEXIS 183238 (N.D. Cal. Dec. 20, 2012) ............................................................ 10
Trinh v. JPMorgan Chase & Co. , No. CASE NO: 07-CV-01666 W (WMC),
2009 U.S. Dist. LEXIS 16477 (S.D. Cal. Mar. 3, 2009) ......................................... 5
United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403 (9th Cir. 1990) ................. 13

**STATUTES**

29 U.S.C. § 201 (2012) ......................................................................................... 1
29 U.S.C. § 216(b) ............................................................................................... 12
29 U.S.C. § 216(b) (2012) ................................................................................... 12
29 U.S.C. § 216(c) (2012) ..................................................................................... 1

## I.      INTRODUCTION

Plaintiffs, by and through their undersigned counsel, and with consent of Defendant, request that this Court approve the individual settlements reached by the Parties concerning Plaintiffs' lawsuit under the Fair Labor Standards Act (hereinafter, "FLSA") 29 U.S.C. §§ 201, *et seq*.  This case is one of four related cases filed in federal district courts across the country.[3] Moreover, there are 61 related individual cases pending in arbitrations across the country through the American Arbitration Association ("AAA").   The Parties seek Court approval of 135 individual settlements in this particular case because claims under the FLSA, such as those released by the Plaintiffs, may not be waived or released without U.S. Department of Labor or Court approval. *See* 29 U.S.C. 216(c); *Seminiano v. Xyris Enter.*, 602 Fed. Appx. 682, 683 (9th Cir. 2015).

## II.      BACKGROUND

### A.      The Pleadings

On May 28, 2014, Plaintiffs Robert Wilson and Eric McNeal filed this case against Defendant, Maxim Healthcare Services, Inc., alleging that Maxim violated the federal Fair Labor Standards Act ("FLSA") by misclassifying them and other Senior Recruiters as exempt and failing to pay them overtime wages for work performed in excess of forty (40) hours per week.  (Doc. 1). Maxim filed its Answer on August 15, 2014, denying Plaintiffs' allegations and asserting 25 affirmative defenses.  (Doc. 25).

### B.      Conditional Certification and Other Pre-Discovery Events

On July 15, 2014, Plaintiffs filed their motion for FLSA conditional certification, which was fully briefed by the Parties.  (Docs. 10-11, 32-46, 50, 52).  Maxim also filed related, collateral motions, including a Motion for Stay to Engage in Limited Expedited Discovery (Doc. 16).  The

---

[3] *See Alderoty v. Maxim Healthcare Servs., Inc.*, Case No. 14-cv-02549 (D. Md.); *Crother v. Maxim Healthcare Servs., Inc.*, Case No. 15-cv-2912 (N.D. Cal.); *Weigand v. Maxim Healthcare Servs., Inc.*, 15-cv-4215 (W.D. Mo.).

Motion to Stay was fully briefed by the parties. (*See* Docs. 21 and 24).  On August 18, 2014, the Court denied Maxim's Motion for Stay to Engage in Limited Expedited Discovery. (Doc. 28).

On December 22, 2014, the Court issued its Order Granting Motion for Conditional Certification.  (Doc. 53).  The parties subsequently negotiated the language of the notice and submitted it to the Court for approval. (Docs. 56 and 59).  On February 18, 2015, the Court-authorized notice was sent to approximately 820 putative collective members.  At the close of the opt-in period (April 20, 2015), a total of 213 employees had affirmatively joined the case by filing their consent forms. (*See* Docs. 1, 9, 48, 60-68, 70, 72-74, 76-78, 80-89, and 105).

On August 10, 2015, pursuant to the Parties' prior stipulation regarding arbitration,[4] 132 of the 213 Plaintiffs withdrew their consent forms.  (Doc. 92).  Out of the 132 individuals dismissed to individual arbitration, seventy-nine (79) of them retained Plaintiffs' Counsel to pursue individual cases in arbitration.  Thus, eighty-one (81) Plaintiffs were set to proceed in this litigation while another seventy-nine (79) claimants were set to proceed in their individual arbitrations.

## C. <u>Discovery</u>

Once the Parties knew who would be litigating (and in what forum), they turned their attention to discovery.  In November 2015, Maxim served its written discovery requests on each of the 81 Plaintiffs, directing 15 interrogatories and 31 requests for production of documents at each Plaintiff.  Maxim also sought to take depositions of 25 of the Plaintiffs.

On February 1, 2016, the parties sought the entry of a new case management order from the Court that took into account the related pending recruiter cases in federal courts (*see supra*, n.3) and the 79 individual arbitrations pending in AAA. (Doc. 97).

On February 2, 2016, Plaintiffs filed a Motion for Protective Order Against Class-Wide Discovery and for Relief Concerning Opt-In Plaintiff Depositions. (Doc. 98).  By way of that

---

[4] On February 4, 2015, the Parties stipulated to the dismissal of numerous Plaintiffs to individual arbitration and to a similar procedure for any other individuals who sought to join the case after signing an individual arbitration agreement.  (Doc. 58).

Motion, Plaintiffs sought to limit written discovery to 10% of the opt-in Plaintiffs and to use the written discovery and depositions from the AAA matters in this case which, Plaintiffs argued, amounted to a large discovery sample. *Id.*   Defendant filed a Response to the Motion (Doc. 103).

On March 14, 2016, Plaintiffs served written discovery on Maxim, including requests to admit, interrogatories, and requests for production of documents.  Maxim responded to Plaintiffs' discovery requests and produced more than 3,000 pages of documents.

Meanwhile, between February and April 2016, due to the advanced case schedules in the individual AAA recruiter arbitrations, the Parties conducted written discovery in many of those cases and began taking depositions across the country, including in California, Florida, Missouri, Nevada, Oregon, and Washington.[5]  Maxim deposed the recruiter claimants and Plaintiffs' Counsel deposed the claimant's former supervisor(s).  In all, over a dozen depositions were taken of recruiters and their supervisors during that period.

On April 12 and 13, 2016, Plaintiffs' Counsel took a Rule 30(b)(6) deposition of Maxim's corporate witness regarding 14 designated matters.  The deposition included 20 exhibits and lasted approximately 11 hours over the course of two days.

On May 13, 2016, the Court entered its order regarding Plaintiffs' Motion for Protective Order Against Class-Wide Discovery and for Relief Concerning Opt-In Plaintiff Depositions. (Doc. 107).  By way of that Order, the Court directed the individual Plaintiffs to respond to certain interrogatories and produce certain documentation related to their work for Maxim.  The Court further ordered that Maxim could depose up to 10 individual opt-in Plaintiffs after reviewing their discovery responses. *Id*.

**D.**     **Settlement Discussions**

Shortly after the Rule 30(b)(6) deposition, the parties began global settlement discussions concerning Maxim's recruiters, which included this case as well as the pending *Alderoty*, *Crother*, and *Weigand* recruiter cases and all of the individual recruiter arbitrations pending in AAA

---

[5] During this same time period, 18 arbitration claimants requested voluntary dismissal of their cases, leaving 61 individual AAA matters.

throughout the country.  On July 7, 2016, the Parties moved this Court for a stay of all deadlines in the case, including briefing and discovery, so the Parties could continue their settlement discussions. (Docs. 108 and 109).  The settlement negotiations lasted for several months, and the Parties eventually agreed to the material terms of a global settlement in or about September 2016, which included the following: (1) Maxim will pay each eligible recruiter a fixed amount of damages for each workweek employed as a recruiter with Maxim during the relevant period; and (2) Maxim will pay a fixed amount to each settling recruiter for their attorneys' fees and costs.

On April 18, 2017, the Court entered a stipulated Order decertifying Plaintiffs' FLSA collective action and withdrawing their Rule 23 class action claims. (Doc. 118).  On April 19, 2017, the Court entered a stipulated Order setting deadlines for the Parties to finalize the individual Agreements and to file the instant joint motion for settlement approval. (Doc. 119).  The Parties have finalized their Agreements and now seek final approval from the Court and dismissal of this action with prejudice. [6]

### III.    LAW AND ARGUMENT

#### A.    The Legal Standard Supports Approval of the Settlement

In reviewing a proposed settlement under the FLSA, a district court must determine whether the settlement "represents a fair and reasonable resolution of a bona fide dispute." *Grewe v. Cobalt Mortg., Inc.*, 2016 U.S. Dist. LEXIS 98224, *2 (W.D. Wash. July 27, 2016) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).  "If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement 'to promote the policy of encouraging settlement of litigation.'" *Mar v. Genuine Parts Co.*, 2017 U.S. Dist. LEXIS 63505, *3 (E.D. Cal. Apr. 25, 2017) (quoting

---

[6] In addition, seven (7) individuals asserting claims in this case will be voluntarily dismissed. Specifically, these individuals initially joined the case as opt-in plaintiffs; however, it was later discovered, based on Maxim's business records, that these individuals were either not Staffing Recruiters or were not Staffing Recruiters during the relevant statute of limitations.

*Lynn's*, 679 F.2d at 1354).  "Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Mar*, 2017 U.S. Dist. LEXIS 63505 at *3.

Although the *Lynn's Foods* test has not been formally adopted by the Ninth Circuit, many district courts in the Ninth Circuit have applied it. *See e.g., Gonzalez-Rodriguez v. Mariana's Enterps.*, 2016 U.S. Dist. LEXIS 92198 (D. Nev. July 14, 2016); *Gamble v. Boyd Gaming Corp.*, 2015 U.S. Dist. LEXIS 107279 (D. Nev. Aug. 13, 2015); *Deane v. Fastenal Co.*, 2013 U.S. Dist. LEXIS 163330 (N.D. Cal. Nov. 14, 2013); *Trinh v. JPMorgan Chase & Co.*, 2009 U.S. Dist. LEXIS 16477 (S.D. Cal. Mar. 3, 2009); *Goudie v. Cable Commc'ns, Inc.*, 2009 U.S. Dist. LEXIS 1907 (D. Or. Jan. 12, 2009); and *Thornton v. Solutionone Cleaning Concepts. Inc.*, 2007 U.S. Dist. LEXIS 8683 (E.D. Cal. Jan. 26, 2007).

### 1. *A Bona Fide Dispute Exists*

A bona fide dispute exists when there are legitimate questions about "the existence and extent of Defendant's FLSA liability." *Selk v. Pioneers Mem. Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. Jan. 29, 2016) (quoting *Ambrosino v. Home Depot. U.S.A., Inc.*, 2014 U.S. Dist. LEXIS 58809, *4 (S.D. Cal. Apr. 28, 2014)). There must be "some doubt . . . that the plaintiffs would succeed on the merits through litigation of their [FLSA] claims." *Collins v. Sanderson Farms*, 568 F.Supp.2d 714, 719-20 (E.D. La. 2008); *see also Mamani v. Licetti*, 2014 U.S. Dist. LEXIS 91048, *3-4 (S.D.N.Y. July 2, 2014) (explaining that to demonstrate a *bona fide* dispute under the FLSA "[t]he employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages") (internal citation omitted).

In this case, Plaintiffs allege that Maxim misclassified them under the administrative exemption and failed to pay them overtime wages as required under the FLSA. (Docs. 1 and 10).

In response, Maxim denies liability and asserted 25 affirmative defenses. (Doc. 25). Defendant also explained the basis for its defenses in its response to the conditional certification motion. (Doc. 32). The record in this case shows that each side's case has significant strengths and weaknesses, and so a *bona fide* dispute does exist as to Maxim's liability under the FLSA.

**2.      *The Settlement Agreements are Fair and Reasonable***

If a *bona fide* dispute exists, district courts in the Ninth Circuit evaluate the fairness and reasonableness of an FLSA settlement using the following factors:

> (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion.

*Selk*, 159 F. Supp. 3d at 1173 (collecting cases). A review of the factors as applied to this case weighs in favor of finding the Agreements to be fair and reasonable.

**i.      *The Plaintiffs' Range of Possible Recovery***

A district court evaluates the plaintiffs' range of potential recovery to ensure that the settlement amount agreed to bears some reasonable relationship to the true settlement value of the claims. *See e.g., Daniels v. Aeropostale West, Inc.*, 2014 U.S. Dist. LEXIS 74081, *10 (N.D. Cal. May 29, 2014) ("it is critical to know the total triable amount so that the judge can evaluate the fairness and reasonableness of the proposed settlement."). The settlement amount need not represent a specific percentage of the maximum possible recovery. *See Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.") (collecting cases). But in comparing the amount proposed in the settlement with the amount that plaintiffs could have obtained at trial, the Court must be satisfied that the settlement is fair and reasonable under the

circumstances presented. *See e.g., Lewis v. Vision Value, LLC*, 2012 U.S. Dist. LEXIS 99854, *6 (E.D. Cal. July 18, 2012) (considering among other things whether the proposed settlement amount is proportionate to the damages plaintiffs could have obtained if they proceeded to trial).

In this case, the Plaintiffs sought unpaid overtime wages, liquidated damages, attorneys' fees, and costs. (Doc. 1). As discussed throughout, the Parties reached a substantial settlement to resolve these claims. This settlement is fair and offers each individual Plaintiff the opportunity to recover a meaningful amount of compensation. The formulas used to compensate the individual Plaintiffs are reasonable, consistent with other wage-and-hour settlements approved by courts in this Circuit, and applied in a manner which does not discriminate against any of the Plaintiffs. In fact, the formulas used in this matter are largely based on the formulas used in prior Maxim recruiter cases, *Stelmachers v Maxim Healthcare Servs., Inc.*, Case No. 1:13-cv-01062 (N.D. Ga.) and *Ene v Maxim Healthcare Servs., Inc.*, Case No. 4:09-cv-02453 (S.D. Tex.), in which similar settlements were approved by those respective courts.[7]

The reasonableness of the settlement is underscored by the fact that Maxim has various defenses to the calculation of damages which, if successful, would shorten the applicable statute of limitations, preclude the payment of overtime at one and one-half times the regular rate of pay, and/or prevent the recovery of liquidated (or double) damages. Moreover, had the Parties not reached a settlement, Maxim fully intended to defend all claims on the merits, seek to decertify the conditionally approved class, and oppose class certification.

Plaintiffs determined that the settlements are in their best interest and represent a fair resolution of this dispute. Plaintiffs initially alleged they were entitled to five (5) hours per week of overtime, and up to 10-15 hours in unpaid work per week if their "on-call" time was deemed compensable. However, through discovery, it became clear that many Plaintiffs would likely not

---

[7] The same formula was also used in the related *Alderoty* recruiter case, in which nearly identical settlement agreements were recently reviewed *in camera* and approved by that court on May 25, 2017 after a fairness hearing. *See Alderoty v. Maxim Healthcare Servs.*, Case No. 14-cv-2549 (D. Md.) (Doc. 139, Order).

reach the larger damage numbers given their specific on-call job duties and the applicable law. Maxim asserted numerous defenses to this claim including the lack of record evidence supporting Plaintiffs' alleged uncompensated work.

Plaintiffs also face the risk of recovering little or nothing at trial should this case not settle.  Even if Plaintiffs were to recover more at trial, any payment would be months or even years later following protracted litigation and possible appeals.   Because Plaintiffs have "received a fair deal regarding the sums that were in controversy" when considering the range of recovery, the settlement is fair and reasonable.  *Crabtree v. Volkert, Inc.*, 2013 U.S. Dist. LEXIS 20543, *10-11 (S.D. Ala. Feb. 14, 2013) (citing *King v. Wells Fargo Home Mortg.,* 2009 U.S. Dist. LEXIS 65721 (M.D. Fla. July 30, 2009) ("Because the Plaintiff agreed to the settlement figure which was entered into knowingly and voluntarily, after having the opportunity to fully discuss it with an attorney, the Court concludes that the proposed settlement is a fair and reasonable resolution of a bona fide dispute over the FLSA.")).

Here, Plaintiffs may recover nothing at all if Maxim successfully defends itself against all claims, or they may obtain a larger recovery if they are able to prove all of their claims.  The settlement, on the other hand, provides meaningful compensation to each Plaintiff now, without the time, expense, and risk of further litigation. The settlement thus bears a reasonable relationship to the true settlement value of Plaintiffs' claims.  Accordingly, this factor weighs in favor of finding the settlement to be fair and reasonable.

### ii.   The Stage of Proceedings and Amount of Discovery Completed

Currently, this case is in the discovery phase and the next step would be dispositive motions.  As described above, the Parties have already engaged in extensive written discovery and over a dozen depositions of recruiters and their supervisors all across the country, including a lengthy Rule 30(b)(6) deposition of Maxim's corporate witness.  The information obtained through discovery was valuable in assisting the Parties to better evaluate their respective

positions, and to better decide what a fair and reasonable settlement would be.  Thus, this factor weighs in favor of finding the settlement to be fair and reasonable.

### iii.   *The Seriousness of the Litigation Risks Faced By the Parties*

It goes without saying that exemption misclassification cases involving challenges to corporate-wide human resources practices are complex.  Such cases often require, as in this case, the careful review of numerous statutes, regulations, and case law.  The Parties were required to analyze and litigate issues concerning liability, damages, class certification, discovery, and a host of other issues which are unique to wage and hour litigation.  There are few "bright line" tests.  As such, this type of litigation can be very challenging and difficult.

Moreover, there is no reason to doubt that further litigation would be both costly and time-consuming.  The Parties already expended considerable time and resources litigating this case over the past three years.  Continuing the present action through trial, and any potential appeals, would be an expensive and lengthy process.  Absent settlement, Defendant would continue to vigorously defend the case, and resolution could take years.  Further litigation would likely require more discovery, briefing on dispositive motions, potentially re-filing individual actions in multiple different forums, and likely appellate practice. The remaining burden for the Parties would be substantial as continued litigation would require resolution of complex issues at considerable time and expense.

Many hours of attorney and paralegal time have been expended during the pendency of the case.  The Parties conducted numerous conference calls and exchanged hundreds of e-mails and correspondence.  Thousands of documents have been exchanged and reviewed.  Travel for depositions has been extensive.  Further, as the docket entries in the case confirm, virtually every conceivable legal issue would need to be litigated.  Without a settlement, there is no doubt that the Parties would continue litigating this case for years with the same tenacity.  Thus, this factor weighs in favor of finding the Agreements to be fair and reasonable.

### iv.   *The Scope of the Release*

The release of claims presented in the Agreements is narrow in scope and only serves to waive any and all <u>wage-related</u> claims, demands, causes of action, fees, and liabilities against Maxim.  Such narrow releases are generally found to be fair and reasonable.  *See Selk*, 159 F. Supp. 3d at 1178 (the "release provision generally tracks the wage and hour claims asserted in the lawsuit"); and *cf. Tijero v. Aaron Bros., Inc.*, 2012 U.S. Dist. LEXIS 183238, *29 (N.D. Cal. Dec. 20, 2012) (finding the scope of a release "overly broad and improper" where the release failed to appropriately track the extent and breadth of plaintiffs' allegations in the complaint and released unrelated claims).  Here, because the release in the Agreements generally tracks the wage and hour claims pled in the Complaint, this factor weighs in favor of finding the Agreements to be fair and reasonable.

> *v.  Plaintiffs are represented by counsel experienced and well versed in FLSA actions and wage and hour law*

Plaintiffs' Counsel has extensive experience and qualifications in this area of law. Sommers Schwartz, P.C. and Johnson Becker, PLLC represented the Plaintiffs at all stages of this litigation.  Both are experienced class action firms, including in wage and hour collective actions. (See ***Exhibit B***, Young Declaration).  Mr. Young has been involved in this litigation from its onset.  Mr. Young is a partner at his firm and manages its wage and hour litigation department.  Further, attorney Jason Thompson spent significant time on this case.  With over 23 years' experience, Mr. Thompson has been recognized for his excellence as a trial lawyer and has been appointed as class counsel in multi-district litigation cases involving overtime pay, antitrust, insurance coverage, environmental pollution, and consumer protection.  Attached to Mr. Young's declaration is a list of Plaintiffs' Counsel's accomplishments, honors, awards and published works.

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, 2014 U.S. Dist. LEXIS 95538,

*16 (N.D. Cal. Jul. 11, 2014).  As the Ninth Circuit has emphasized, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) ("Given counsel's experience in [wage and hour litigation], his assertion that the settlement is fair, adequate, and reasonable support [sic] final approval of the settlement.").

The Parties' counsel exercised their experience based on an intimate knowledge of the facts of the case and legal issues facing the Parties, including conducting independent analyses of the strength and weakness of the claims, the value of the claims, the costs and expense of protracted litigation, discovery, trial, and appeals.  As a result, the Parties' counsel believe the Agreements are fair and reasonable, which provides further support for the fairness and reasonableness of the Agreements.

Lastly, the individual Plaintiffs' response to the settlement has been positive.  Each of the current Plaintiffs in this case authorized Plaintiffs' Counsel to settle their individual cases and nearly all have signed the Agreements to date after having the chance to fully review the Agreement and speak with Plaintiffs' Counsel.[8]

Accordingly, this factor weights in favor of finding the Agreements to be fair and reasonable.

> vi.   *The Settlement was achieved in an adversarial context and there is no existence of fraud or collusion*

There is no fraud or collusion in this action.  The individual Agreements are the culmination of arm's length negotiations between the Parties, which has been hard-fought by competent counsel and determined Parties in multiple actions across the country.  Plaintiffs and Maxim agreed to the settlements, voluntarily and knowingly, and the Parties agree the

---

[8] There were six (6) unsigned Agreements at the time this Motion was filed. Plaintiffs' Counsel expects that those Agreements will soon be signed and submitted to the Court for review.

11

settlements are fair and reasonable based on the facts of the case and negotiations between the parties. *See Comstock v. Florida Metal Recycling, LLC*, 2009 WL 1586604, at *2 (S.D. Fla. June 5, 2009) (stating that "based upon counsel's representation that this outcome is fair in light of [the plaintiff's] probability of success on the merits and that the settlement was reached without coercion, collusion or undue influence, this Court is satisfied that the settlement agreement is a 'fair and reasonable' resolution of a bona fide dispute over Plaintiff's FLSA claims . . .") (internal citations omitted); *Bower v. Cycle Gear, Inc.*, 2016 U.S. Dist. LEXIS 112455, *14 (N.D. Cal. Aug. 23, 2016) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining."). Thus, this factor weighs in favor of finding the settlement to be fair and reasonable.

**B.      Plaintiffs' Attorneys' Fees and Costs are Reasonable**

Lastly, the Court must review Plaintiffs' attorneys' fees and costs for reasonableness. Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  An award of attorneys' fees under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

Courts must use the "lodestar method" to assess the reasonableness of attorneys' fees in FLSA cases. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 (9th Cir. 2008); *Tallman v. CPS Sec. (USA), Inc.,* 23 F. Supp. 3d 1249, 1267 (D. Nev. 2014) (*aff'd* 2016 U.S. App. LEXIS 13521 (9th Cir. July 25, 2016).  Under the lodestar method, the court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Almodova v. City & County of Honolulu*, 2010 U.S. Dist. LEXIS 33199, *28 (D. Haw. Mar. 31, 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)).  "[T]here is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a

reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010). In determining whether the lodestar results in a reasonable fee, district courts may evaluate the twelve well-known factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Ninth Circuit in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to properly perform the legal service; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. However, the Supreme Court has noted that the subjective *Johnson* factors provide very little guidance and, in any event, that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee.'" *Perdue*, 559 U.S. at 551, 553 (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986)).

An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 890 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984).  The Ninth Circuit determines a reasonable hourly rate by reference to the "prevailing market rates in the relevant community" for an attorney of similar experience, skill, and reputation. *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1205 (9th Cir. 2013*)* (quotation omitted).  In determining a reasonable hourly rate, the court may consider "the fees awarded by other judges in the same locality in similar cases." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1115 (9th Cir. 2008); *see also United Steelworkers of Am. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990) ("[R]ate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.").

As to the time and labor required for this litigation, attached to this Motion as **_Exhibit B_** is the declaration of attorney Jesse L. Young, outlining the attorneys' fees and litigation expenses incurred in this particular action and the reasonableness of those fees and expenses.

In this case, Plaintiffs' Counsel charges hourly rates ranging from $125 to $175 for paralegals, $250 to $350 for associates, $375 to $475 for shareholders, and $450 to $685 for senior shareholders. (Young Decl. at ¶¶ 26). Rates within these ranges have been determined reasonable in district courts within the Ninth Circuit. For example, the District of Nevada recently approved as reasonable the following rates in connection with a FLSA settlement: paralegals -- $172 per hour; associates -- $315 to $386 per hour; shareholders -- $558 to $758 per hour. (Young Decl. at ¶ 27).

The declaration also contains a certification that Mr. Young reviewed the time records supporting data for the declaration and that the hours claimed are well grounded in fact and justified. Mr. Young's declaration confirms the total hours incurred in litigating this case to date. The total hours up to the filing of this Motion are 1,387.6 attorney hours and 564.6 paralegal hours totaling fees in the lodestar amount of $760,014.00. Additionally, it is estimated that Plaintiffs' total litigation expenses in this case will exceed $85,000.00.

After extensive arm's length negotiation, the Parties agreed on a fee amount for settlement that equals a significant reduction from the amount of fees actually incurred by Plaintiffs' Counsel in this action and effective attorneys' fee rate equals a _blended_ rate of approximately $389 per hour ($760,014 / 1,952.2 hours). The effective rates of Plaintiffs' Counsel in this case are within the reasonable rates set forth in the Ninth Circuit.

Here, the settlement agreements call for the payment of attorneys' fees and costs directly to Plaintiffs' Counsel. As stated above, the actual lodestar incurred by the Plaintiffs in this case are well in excess of the agreed amount. However, in order to settle this matter, Plaintiffs' counsel reduced their fees and costs significantly and agreed to an amount equaling approximately sixty-seven (67%) percent of the value of each Plaintiffs' settlement amount (which is paid _in addition_ to and separately from their underlying settlement amounts). This

represents a fair compromise of the fees and costs counsel could otherwise have sought through court order, and recognizes the value in resolving this litigation without any party incurring unnecessary further fees.  The Agreements should be approved because: (1) the fees do not infringe on or diminish any of the individual Plaintiffs' recovery; and (2) the fees are reasonable under the lodestar approach.[9]

For these reasons, the Plaintiffs respectively request that the Court approve their attorneys' fees and reimbursement of litigation expenses.

## IV.    CONCLUSION

For all the reasons presented above, this Court should approve the Parties' settlements, approve the requested attorneys' fees and costs, and dismiss the case with prejudice.

Dated:  June 9, 2017                         Respectfully submitted,

*/s/  Jesse L. Young*
Jason J. Thompson (Admitted Pro Hac Vice)
Jesse L. Young (Admitted Pro Hac Vice)
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, MI 48076
Telephone: (248) 355-0300
Facsimile: (248) 864-7840
Email: jthompson@sommerspc.com
          jyoung@somerspc.com

Timothy J. Becker (Admitted Pro Hac Vice)
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, MN 55402
Tel: 612.436.1800
Fax: 612.436.1801
Email: tbecker@johnsonbecker.com

*Attorneys for Plaintiff*

---

[9] The same fee request and calculation was recently reviewed and approved by the *Alderoty* court on May 25, 2017 after a fairness hearing.  *See Alderoty v. Maxim Healthcare Servs.*, Case No. 14-cv-2549 (D. Md.) (Doc. 139, Order).

1

**<u>CERTIFICATE OF SERVICE</u>**

2

   I certify that on June 9, 2017, I electronically filed the forgoing document with the Clerk

3

of the Court using the ECF system, which will send notification of such filing to all counsel of

4

record.

5

                                        */s/Jesse L. Young*
                                        Jesse L. Young

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27